# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES E. BRAMLETT, # K-91341, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-cv-1177-JPG |
| ) | |
| MS. TONI ISAACS, ) | |
| DR. MARK S. CARICH, ) | |
| and MARYLIN LIGGET, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Charles E. Bramlett, who is confined indefinitely in the Big Muddy River Correctional Center ("BMRCC") after having been adjudicated a Sexually Dangerous Person ("SDP"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.[1] The events that form the basis of his claims occurred between January 24, 2012, and July 13, 2012 (Doc. 1, pp. 6-7).

According to the complaint, Plaintiff received his semi-annual evaluation of progress in the sex offender treatment program (covering January 2011 through June 2011) on January 24, 2012 (Doc. 1, p. 6). Defendant Isaacs, the therapist/counselor who worked with Plaintiff during that period, had recommended giving Plaintiff the highest possible score (5) to show that he met program expectations on one item in the evaluation: "arousal control." However, Defendant Carich (the program administrator at the time) changed that score to zero. Plaintiff believes

---

[1] Civilly committed sex offenders in Illinois are subject to the PLRA (28 U.S.C. § 1915 *et seq*). *Kalinowski v. Bond*, 358 F.3d 978, 978-79 (7th Cir. 2004). Persons civilly committed under the Sexually Dangerous Persons Act are deemed to be pretrial detainees, not convicted prisoners. *See Allison v. Snyder*, 332 F.3d 1076, 1078-79 (7th Cir. 2003).

Defendant Carich lowered his score because Plaintiff refused to practice masturbation (as recommended by Defendant Carich) in order to accomplish arousal control, and instead chose to practice abstinence, in accordance with his religious beliefs (Doc. 1, pp. 6-7). Plaintiff equates the practice of masturbation with a renunciation of his faith. Plaintiff filed a grievance over this scoring change on March 8, 2012.

Plaintiff argues that Defendant Carich's action amounted to cruel and unusual punishment because it could result in prolonging his imprisonment, denied him due process, violated his First Amendment right to freedom of religion, and constituted retaliation for Plaintiff's refusal to "worship" Defendant Carich by following his treatment advice instead of Plaintiff's own religious beliefs (Doc. 1, pp. 7-9).

On March 5, 2012, Defendant Isaacs issued Plaintiff a "program ticket" for "sleeping under the stairs the first half of Victim Awareness and staying under the stairs" (Doc. 1, p. 7). Plaintiff never explains what, if any, consequences resulted from this ticket, but claims that his receipt of the ticket could cause his incarceration to be extended for another two to five years. He argues that he was subjected to a "double standard" because other SDP detainees housed with Plaintiff on Wing 4-B were never issued tickets, even though they failed to show up for the session (Doc. 1, p. 9). Further, Defendant Isaacs never informed him of the rule which he violated before writing him the ticket, but had advised detainees on the 4-C Wing of the regulations. The responses to Plaintiff's grievance illuminate the facts somewhat, by noting that residents of 4-B Wing are exempt from some of the treatment requirements that govern the residents of Wing 4-C (Doc. 1-1, pp. 5, 8). However, if a 4-B resident chooses to attend treatment, he must follow the same guidelines that apply to the 4-C residents. Plaintiff's grievance over the program ticket was denied, noting that Plaintiff admitted he slept under the

stairs during the treatment program (Doc. 1-1, p. 8, 9). Based on this incident, Plaintiff claims he was subjected to cruel and unusual punishment, denied due process, suffered unconstitutional retaliation, and suggests he was denied equal protection under the law (Doc. 1, pp. 8-9).

Plaintiff's second claim against Defendant Isaacs is that on April 3, 2012, during a group therapy session, she threatened to have Plaintiff's property shaken down and kick him out of her group if he did not bring his copy of his March 8 grievance against Defendant Carich to the group for discussion (Doc. 1, p. 7). Plaintiff had refused to discuss the grievance in the group. He claims herein that this threat interfered with his right to have the grievance system work on his behalf, in violation of his due process rights. Further, if he had been kicked out of the group, he could be denied release from custody. Finally, the threat constituted retaliation for his refusal to locate and discuss the grievance document (Doc. 1, p. 9).

Plaintiff's last claim is against Defendant Ligget, the former mailroom supervisor at BMRCC. Plaintiff paid for postage on May 3, 2012, to send a package of legal mail to an attorney. This package was returned to him on May 18, 2012, undelivered (Doc. 1, p. 7). He claims it had no markings, stickers, or stamp impressions to indicate it had ever left the prison mailroom, and maintains it was never mailed. He filed a grievance; the response stated that the package had indeed been mailed out because it was marked with a United States Postal Service tracking number and had been marked return to sender (Doc. 1-1, pp. 21-22). Plaintiff claims that Defendant Ligget violated the Eighth Amendment by charging him postage without ever mailing the package, and violated his First Amendment right to communicate with the outside world. He also asserts that she refused to send out this legal mail in retaliation for his bringing a previous lawsuit against other BMRCC employees[1] (Doc. 1, pp. 8-9).

---

[1] Plaintiff had only one pending lawsuit in this Court at the time of the legal package incident: *Bramlett v. Carich*, Case No. 11-cv-97-GPM-DGW (filed Feb. 3, 2011, dismissed Nov. 22, 2013). Plaintiff did not

Plaintiff seeks declaratory relief, compensatory and punitive damages.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant. Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal claims, which shall receive further review:

**Count 1:** Against Defendant Carich for violating the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act (42 U.S.C. § 2000cc-1(a)) ("RLUIPA"),[2] when he gave Plaintiff a detrimental evaluation because Plaintiff refused to go against his religious beliefs which prohibit the practice of masturbation;

**Count 2:** Retaliation claim against Defendant Carich, in that he gave Plaintiff a detrimental evaluation for asserting his First Amendment right to refuse to engage in behavior which would violate the tenets of his faith;

**Count 3:** Retaliation claim against Defendant Ligget, for refusing to send out Plaintiff's legal mail after he filed a lawsuit against other BMRCC employees.

As to Count 3, if the package was in fact mailed out and then returned through the U.S. Mail (as described in the grievance response), then no retaliation will have occurred. However,

---

assert any claim against Defendant Ligget in that action, although he named ten other BMRCC employees as defendants. On October 26, 2012, Plaintiff filed another suit against Defendant Ligget and others (which did not include the claims he now asserts herein): *Bramlett v. Ligget*, Case No. 12-cv-1128-JPG-PMF. One claim in that action was later severed into another case, *Bramlett v. Carich*, Case No. 13-cv-204-JPG-PMF.

[2] Although Plaintiff did not invoke the statute in his complaint, the Court has added a claim under RLUIPA based on the same facts he alleges to support his constitutional claim. *See Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) (advising courts to interpret First Amendment free exercise claims filed by pro se plaintiffs as including a RLUIPA claim).

at this early stage it is not appropriate for the Court to make a determination on a disputed factual issue; therefore, this claim may go forward at this time. Nonetheless, the claim in Count 3 cannot remain in this action, because it is not legally or factually related to the claims against Defendant Carich in Counts 1 and 2. In accordance with *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits) and Federal Rule of Civil Procedure 21, the Court shall sever Count 3 of Plaintiff's complaint, and shall open a new case with a newly-assigned case number for that claim. Plaintiff shall have an opportunity to voluntarily dismiss the newly severed case if he does not wish to proceed on that claim or incur the additional filing fee.

**Claims to be Dismissed**

The additional claims against Defendant Carich **(Count 4)** are duplicative and shall be dismissed. As to Defendant Ligget, her alleged failure to mail one legal package did not violate the First Amendment, nor did she violate any constitutional right by charging Plaintiff for postage for the undelivered package (These claims are combined into **Count 5**). Finally, Plaintiff fails to state a viable cause of action against Defendant Isaacs **(Count 6)** for cruel and unusual punishment, denial of due process, retaliation, or denial of equal protection. These claims shall therefore be dismissed.

**Dismissal of Count 4 - Defendant Carich**

Plaintiff's additional claims against Defendant Carich (Eighth Amendment and due process violations) are redundant, as they are based on the same set of facts already addressed in Counts 1 and 2 above, which shall receive further consideration. *See Conyers v. Abitz,* 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as free exercise claim because free exercise claim "gains nothing by

attracting additional constitutional labels"); *Williams v. Snyder*, 150 Fed. App'x 549, 552-53 (7th Cir. 2005) (dismissing equal protection, access to courts, due process, and Eighth Amendment claims as duplicative of retaliation and freedom of religion claims). Accordingly, Plaintiff's claims that Defendant Carich caused him to suffer cruel and unusual punishment and deprived him of due process (both designated as Count 4) shall be dismissed with prejudice.

**Dismissal of Count 5 - Defendant Ligget**

Although Plaintiff may at this point pursue his retaliation claim in Count 3 (to be severed), his other theories of recovery against Defendant Ligget both fail.

Assuming that Plaintiff is correct that Defendant Ligget never mailed his package, charging him for postage does not violate the Eighth Amendment. The only constitutional right that might be implicated by these facts is Plaintiff's right, under the Fourteenth Amendment, to be free from deprivations of his property by state actors without due process of law. To state a claim under the due process clause of the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property *without due process of law*; if the state provides an adequate remedy, Plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). Therefore, if there was indeed a wrongful charge for postage, Plaintiff's remedy lies in the Court of Claims, not in federal court.

As to the First Amendment claim, this single instance of an alleged failure to deliver mail to an attorney does not rise to the level of a constitutional violation. "[I]solated incidents of

interference with legal mail" may not state a constitutional violation without a showing of "a systematic pattern or practice of interference." *Bruscino v. Carlson*, 654 F. Supp. 609, 618 (S.D. Ill. 1987); *see also Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (an isolated delay or short-term disruption of mail delivery does not support a First Amendment claim). Moreover, Plaintiff has not alleged any detriment in his ability to access the courts as a result of this incident. *See Rowe*, 196 F.3d at 782.

For these reasons, the additional civil rights claims designated as Count 5 shall be dismissed with prejudice.

**Dismissal of Count 6 - Defendant Isaacs**

Neither the March 5 program ticket nor the threat of adverse action by Defendant Isaacs during the April 3 therapy session violated Plaintiff's constitutional rights, under any of the theories he puts forth.

Plaintiff first advances an Eighth Amendment/cruel and unusual punishment claim. As a "detainee" any constitutional claim brought pursuant to § 1983 by Plaintiff would arise under the Fourteenth Amendment and not the Eighth Amendment. *See Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000). However, the Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'" *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 n.2 (7th Cir. 1999)). Eighth Amendment protection reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Prison conditions that deprive an inmate

of a basic human need such as food, medical care, sanitation, or physical safety may violate the Eighth Amendment.

None of Plaintiff's allegations herein suggest that he has been subjected to any unconstitutional conditions as a result of Defendant Isaacs' actions. Instead, the gist of his claim is that the *duration* of his incarceration may be prolonged by the program ticket and/or the detrimental evaluation where Defendant Isaacs deferred to Defendant Carich's adverse scoring. At this time, such a claim is purely speculative. Plaintiff has been found by a state court judge to be a sexually dangerous person, and the duration of his commitment is to be determined by the court where the SDP proceeding took place. *See* 725 ILL. COMP. STAT. 205/0.01 *et seq*. The state-court SDP case is ongoing in nature, involving periodic review of his confinement and the opportunity for Plaintiff to petition for his release. *See* 725 ILL. COMP. STAT. 205/9 and 205/10. Thus, proving that the actions of Defendant Isaacs or any other individual caused Plaintiff's release to be delayed would seem to be very problematic. Furthermore, there is another significant barrier to the recovery of any damages in a civil rights claim based on an alleged lengthening of Plaintiff's incarceration.

Under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), a prisoner cannot seek damages for an allegedly unconstitutional imprisonment unless he can first "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Plaintiff does not claim that the judgment which ordered him confined as an SDP has been so invalidated. Therefore, he cannot obtain damages for his lawful confinement.

Turning to Plaintiff's due process claims, he does not describe any hearing or adjudication proceeding that followed the issuance of his program ticket. He did, however, contest the ticket by filing a grievance, which was denied. There is no indication that the grievance procedure failed to provide adequate process to hear and consider Plaintiff's defenses to the ticket. The fact that his grievance did not succeed does not mean he was denied due process.

Further, Plaintiff does not indicate that he incurred any punishment or loss of privileges as a result of Defendant Isaacs' ticket. The only consequence he mentions is the possibility that the ticket might prolong his incarceration. If that is so, then Plaintiff would have an opportunity to contest the incident and his evaluation by BMRCC staff in state court when the issue of his continued confinement is reviewed. The state court proceeding certainly satisfies any due process concerns. As noted above, Plaintiff's confinement will continue until the state judge orders his release. Plaintiff's liberty has already been curtailed by his SDP commitment, and he has not suffered any further loss of liberty as a result of the program ticket. Thus, there has been no deprivation of a liberty interest without due process, and this claim also fails.

Plaintiff also argues that he was treated differently from other inmates who resided with him on Wing 4-B, because he was given a ticket for sleeping under the stairs during a therapy session, when others also failed to show up, but were not ticketed. Plaintiff appears to be making a "class of one" equal protection claim. However, the complaint does not show that Plaintiff was singled out for different treatment for no rational reason. See *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (plaintiff alleging class-of-one equal protection claim must plead that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"). His documentation explains that even voluntary

participants were expected to follow the rules, which provides a rational basis for the action, fair or not. Therefore, he fails to state an equal protection claim upon which relief may be granted.

Plaintiff's final theory as to the program ticket is that it was issued in retaliation for his "refusing to accept the purpose of his being put on 4-B wing" (Doc. 1, p. 9). In order to state a retaliation claim, an inmate must have engaged in some protected First Amendment activity (for example, filing a grievance or otherwise complaining about conditions of confinement), experienced an adverse action that would likely deter such protected activity in the future, and must allege that the protected activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). Further, where the alleged retaliatory act is a disciplinary ticket, retaliation will not be presumed. "Rather, the prisoner must allege a chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane,* 857 F.2d 1139, 1143 n.6 (7th Cir. 1988) (citing *Murphy v. Lane,* 833 F.2d 106, 108-09 (7th Cir. 1987)). "Barring such a chronology, dismissal may be appropriate in cases alleging retaliatory discipline." *Id*. Here, Plaintiff does not describe any protected activity on his part, nor does the series of events suggest that Defendant Isaacs was motivated by retaliation. Instead, it appears that she issued Plaintiff a ticket as a consequence for his failure to adhere to the rules. This retaliation claim, therefore, shall be dismissed.

Plaintiff also complains of Defendant Isaacs' threats to kick him out of the therapy group and have his property searched if he did not comply with her direction to produce his grievance against Defendant Carich and discuss the matter with the group. Importantly, Plaintiff does not claim that she carried out these threats; he merely complains that her threats put undue pressure on him to comply. As with the disciplinary ticket matter, Plaintiff's confinement was not extended because of this incident. Further, he fails to state a retaliation claim based on these

threats. While Plaintiff's reluctance to discuss the pending grievance might be considered a protected act, in order to state a retaliation claim, he must have also experienced an *act* of retaliation. *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Defendant Isaacs' threats were never carried out, thus no retaliatory act occurred.

Finally, Plaintiff's claim that Defendant Isaacs' threats interfered with his right to have the grievance process work on his behalf is of no consequence. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Because Plaintiff has no due process right to have his grievance resolved, any possible interference by Defendant Isaacs did not violate his constitutional rights.

For the above reasons, all claims against Defendant Isaacs (Count 6) shall be dismissed. The dismissal of the *Heck*-barred claims (potential extension of his confinement based on the program ticket and/or evaluation) shall be without prejudice. All other claims shall be dismissed with prejudice.

**Disposition**

**COUNT 4** is **DISMISSED** with prejudice as duplicative. **COUNT 5** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. **COUNT 6** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted, except that the claims for extension of his incarceration, now barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), are **DISMISSED** without prejudice. Defendant **ISAACS** is **DISMISSED** from this

action with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's retaliation claim (**COUNT 3**), which is unrelated to the claims in Counts 1 and 2, is **SEVERED** into a new case. That new case shall be: Retaliation claim against **DEFENDANT LIGGET**.

The new case **SHALL BE ASSIGNED** to the undersigned District Judge for further proceedings. In the new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order
(2) The Complaint (Doc. 1)

Plaintiff is **ADVISED** that if, for any reason, he does not wish to proceed with the newly-opened case, he must notify the Court in writing within 35 days (on or before January 16, 2014). Unless Plaintiff notifies the Court that he does not wish to pursue the newly opened action, he **will be responsible for an additional $350.00 filing fee** in the new case. Service shall not be ordered on Defendant Ligget until after the deadline for Plaintiff's response.

**IT IS FURTHER ORDERED** that the <u>***only claims remaining in this action are COUNTS 1and 2 against Defendant Carich***</u>. This case shall now be captioned as: **Charles E. Bramlett, Plaintiff, vs. Mark S. Carich, Defendant.**

**IT IS FURTHER ORDERED** that Defendant **LIGGET** is **TERMINATED** from *this* action with prejudice.

As to **COUNTS 1 and 2**, which remain in the instant case, the Clerk of Court shall prepare for Defendant **CARICH** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the

Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: December 12, 2013**

                                       *s/ J. Phil Gilbert*
                                       United States District Judge